IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRIENDLIAI INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-816 (MN) |
| | ) | |
| HUGGING FACE, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |

## DEFENDANT'S ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIM

Defendant Hugging Face, Inc. (Hugging Face) submits its answer, affirmative defenses, and counterclaim to Plaintiff FriendliAI Inc.'s (FriendliAI) complaint, as set forth herein. Hugging Face denies all allegations not expressly admitted herein.

## NATURE OF THE ACTION

1.      This is a civil action arising under the Patent Laws of the United States, 35 U.S.C. §§ 271 *et seq*., for infringement of United States Patent No. 11,442,775 (the "'775 patent" or the "Patent-in-Suit") relating to artificial intelligence technology, specifically for machine-learning transformer neural network models.

**ANSWER:**

Hugging Face admits the complaint purports to state a claim under 35 U.S.C. §§271 *et seq*. for infringement of United States Patent No. 11,442,775.  Hugging Face states the '775 patent speaks for itself, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe the '775 patent.  Hugging Face denies any remaining allegations of this paragraph.

2.      Artificial intelligence, or AI, is a field of computer science that focuses on creating intelligent machines capable of performing tasks that typically require human intelligence.  Using algorithms, data, and computational power, AI can understand, process, and generate human language; analyze and interpret data; and make decisions or take actions to achieve specific

goals.  AI has a wide range of applications across various industries, including healthcare, finance, transportation, manufacturing, cybersecurity, gaming, and entertainment.  The global AI market size is projected to grow at a Compound Annual Growth Rate (CAGR) of 36.8%, reaching $1,345.2 billion by 2030 from $150.2 billion in 2023.  *See* https://www.marketsandmarkets.com/PressReleases/artificial-intelligence.asp.

**ANSWER:**

Hugging Face states this paragraph recite general allegations to which no response is required.  To the extent a response is required, Hugging Face denies the allegations of the first three sentences of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe the field of artificial intelligence.  Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of the last sentence of this paragraph, and therefore denies them.

3.     FriendliAI is a pioneering AI company that focuses on large-scale generative AI technology.  Following substantial research, FriendliAI developed a serving engine for large-scale generative AI models that optimizes efficiency, throughput and latency.  FriendliAI's novel serving engine can be used for a variety types [sic] of generative AI tasks, including data generation, translation, sentiment analysis, text summarization, auto-correction and the like.  Such efforts by FriendliAI, and its founder and CEO Dr. Byung-gon Chun, have resulted in the issuance of multiple patents, including the Patent-in-Suit.

**ANSWER:**

Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

## THE PARTIES

4.     Plaintiff FriendliAI is a company organized and existing under the laws of the Republic of Korea, with its principal place of business at 5F, AMC Tower, 222 Bongeunsa-ro, Gangnam-gu, Seoul, 06135, Korea.

**ANSWER:**

On information and belief, admitted.

5.      Defendant Hugging Face, Inc. is a company organized and existing under the laws of the State of Delaware, with its principal place of business at 20 Jay St, Ste 620, Brooklyn, New York, 11201.

**ANSWER:**

Admitted.

## JURISDICTION AND VENUE

6.      This action arises under the patent laws of the United States, including 35 U.S.C. §§ 271 *et seq*.  The jurisdiction of this Court over the subject matter of this action is proper under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**

This paragraph states legal conclusions to which no response is required.  To the extent a response is required, Hugging Face admits the action purports to arise under the patent laws of the United States, including 35 U.S.C. §§ 271 *et seq*.  Hugging Face admits this Court has subject matter jurisdiction under 28 U.S.C. §§ 1331 and 1338(a) over claims asserted under the patent laws of the United States including 35 U.S.C. §§ 271 *et seq*.

7.      Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b), (c), and 1400(b).  Defendant is an entity organized under the laws of Delaware and resides in Delaware for purposes of venue under 28 U.S.C. § 1400(b).  Defendant conducts business in Delaware, at least by offering for sale, selling, and otherwise making available products and services through its website, which are accessible in Delaware.  Defendant has also committed and continues to commit acts of infringement in this District.

**ANSWER:**

This paragraph states legal conclusions to which no response is required.  To the extent a response is required, Hugging Face does not contest venue for purposes of this action only.  Hugging Face admits it is a Delaware corporation.  Hugging Face denies the remaining allegations of this paragraph.

8.      This Court has personal jurisdiction over Defendant because Defendant conducts business in Delaware by at least offering for sale, selling, and otherwise making available products and services through its website,

which are accessible in Delaware, and because infringement has occurred
and continues to occur in Delaware.

**ANSWER:**

This paragraph states legal conclusions to which no response is required.  To the extent a

response is required, Hugging Face does not contest this Court exercising personal jurisdiction

over it for purposes of this action only.  Hugging Face denies the remaining allegations of this

paragraph.

9.      Personal jurisdiction also exists over Defendant because it is an entity
        incorporated in and organized under the law of Delaware.

**ANSWER:**

This paragraph states legal conclusions to which no response is required.  To the extent a

response is required, Hugging Face does not contest this Court exercising personal jurisdiction

over it for purposes of this action only.  Hugging Face admits it is a Delaware corporation.

Hugging Face denies any remaining allegations of this paragraph.

## BACKGROUND OF THE PATENTED TECHNOLOGY

10.     The founder and CEO of FriendliAI is Dr. Byung-gon Chun, a computer
        scientist and Professor known for his contributions to the field of computer
        systems, distributed computing, and artificial intelligence.  Dr. Chun
        received his Ph.D. in Computer Science from the University of California,
        Berkeley.  He is currently a Professor in the Computer Science and
        Engineering (CSE) Department at Seoul National University (SNU), where
        he leads the Software Platform Lab (SPL), conducts research on machine
        learning systems, and teaches courses, including courses on Artificial
        Intelligence and Big Data Systems.  Dr. Chun has published numerous
        papers in reputable conferences and journals, and has received a number of
        awards, including the EuroSys 2021 Test of Time Award, the 2020 ACM
        SIGOPS Hall of Fame Award, the 2020 Google Research Award, the 2019
        SNU Education Award, and the 2018 Amazon Machine Learning Research
        Award.  Dr. Chun's work has contributed to advancements in the design and
        optimization of the performance, scalability, and reliability of large-scale
        distributed systems, including serving and training transformer-based
        generative AI models.

91337056.1

**ANSWER:**

Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

11.     The vision of FriendliAI is to enable innovation by lowering barriers to serving generative AI.  In furtherance of that vision, FriendliAI developed PeriFlow (a version of a distributed serving system called Orca), a patented solution that efficiently serves large-scale AI transformer models. PeriFlow/Orca uses a novel optimization technique referred to as batching with iteration-level scheduling, also known as dynamic batching or continuous batching, which provides for improved throughput and decreased latency as compared to prior art systems.

**ANSWER:**

Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

12.     Before FriendliAI's inventions, transformer models had begun to be widely used for AI applications.  Pre-existing transformer models, however, suffered from latency and throughput issues, especially when used for large-scale applications.  Dr. Chun and his colleagues at FriendliAI and Seoul National University recognized that such issues resulted from the use of a blunt scheduling mechanism, which was primarily designed to schedule executions at request granularity.  In existing models, a form of "batching," referred to as naive batching or static batching, could be used to process multiple requests at once, in order to increase overall throughput.  But because requests can vary in complexity and length, particularly in generative AI applications, and because the transformer generation model only returns the execution results to the serving system when it finishes processing all requests in the batch, a request that "finishes" early cannot be sent to the client immediately, but rather must wait until the last request in the batch is "finished," imposing a substantial amount of extra latency (or in plain language, causing delays in processing the requests in the batch). Similarly, when a new request arrives in the middle of the current batch's execution, the aforementioned scheduling mechanism makes the newly-arrived request wait until all requests in the current batch have finished. The inflexibility of such scheduling mechanisms resulted in high latency and low overall throughput.

91337056.1

**ANSWER:**

Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

13.    Dr. Chun and his colleagues recognized that a method of scheduling the system on a finer granularity could resolve the latency and throughput issues associated with existing systems.

**ANSWER:**

Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

14.    After substantial research, Dr. Chun developed novel technology referred to as batching with iteration-level scheduling (also called dynamic batching or continuous batching).  Iteration-level scheduling allows for a finished request to be sent to a client, and for new requests to be sent to the execution engine, before all requests in a batch are completed. Iteration-level scheduling provides for a highly efficient and scalable serving of generative AI transformer models, with optimized throughput and latency.

**ANSWER:**

Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

15.    Batching with iteration-level scheduling is described in a paper co-authored by Dr. Chun and others at FriendliAI, and presented in July 2022, during the Proceedings of the 16th USENIX Symposium on Operating Systems Design and Implementation.  *See* Ex. 3 (Yu, G.-I., Jeong, J.S., Kim, G.-W., Kim,S. [sic], and Chun, B.-G. Orca:  A distributed serving system for {Transformer-Based} generative models. In *16th USENIX Symposium on Operating Systems Design and Implementation (OSDI 22)*, pp. 521–538, 2022).

**ANSWER:**

Hugging Face states Exhibit 3 and the referenced presentation and publication speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 3 and the referenced presentation and

publication.  Hugging Face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

16.     Dr. Chun's paper is recognized by others in the industry as the "first" to disclose iteration-level scheduling (also known as dynamic batching or continuous batching).  *See* Ex. 4 (https://www.anyscale.com/blog/continuous-batching-llm-inference).

**ANSWER:**

Hugging Face states Exhibit 4 and the website linked to the referenced URL speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 4 and the website linked to the referenced URL.  Hugging Face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

17.     The industry has also recognized the benefit of FriendliAI's novel technology—an increase in throughput and decrease in latency—with one article detailing how "continuous batching" (which is also known in the industry as dynamic batching, or batching with iteration-level scheduling) "improves throughput by wasting fewer opportunities to schedule new requests, and improves latency by being capable of immediately injecting new requests into the compute stream."  *See* Ex. 4 (https://www.anyscale.com/blog/continuous-batching-llm-inference).

**ANSWER:**

Hugging Face states Exhibit 4 and the website linked to the referenced URL speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 4 and the website linked to the referenced URL.  Hugging Face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

18.     The Patent-in-Suit resulted from Dr. Chun's research to develop an innovative serving engine for generative AI transformer models.

**ANSWER:**

Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

## PATENT-IN-SUIT

19.   The '775 Patent, entitled "Dynamic Batching for Inference System for Transformer-Based Generation Tasks" was duly and legally issued by the United States Patent and Trademark office on September 13, 2022.  The inventors of the patent are Gyeongin Yu, Geon-Woo Kim, Joo Seong Jeong, Soojeong Kim and Byung-Gon Chun, and the patent is assigned to FriendliAI.  A copy of the '775 Patent is attached hereto as Exhibit 1.

**ANSWER:**

This paragraph states legal conclusions to which no response is required.  To the extent a response is required, Hugging Face states the '775 patent speaks for itself, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe the '775 patent and its inventors.  Hugging Face admits a copy of what purports to be the '775 patent is attached to the complaint as Exhibit 1.  Hugging Face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

20.   FriendliAI is the exclusive owner of all rights, title, and interest in the '775 Patent, and has all rights to bring this suit to recover damages for any current or past infringement of the '775 Patent.  *See* Ex. 1.

**ANSWER:**

Hugging Face states Exhibit 1 speaks for itself, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 1.  Hugging Face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

21.   The '775 Patent is directed to, among other things, novel methods used to process batches of transformer-based requests, which involves scheduling

batches at an iteration-level.  For example, claim 10 of the '775 patent recites the claim language below, including claim language (bolded and italicized) directed to iteration-level scheduling:

10. A non-transitory computer-readable storage medium storing computer program instructions executable to perform operations for dynamically executing batches of requests on one or more execution engines running a machine-learning transformer model, the operations comprising:

receiving, by a serving system, one or more requests for execution, the serving system including a scheduler and one or more execution engines each coupled to access a machine-learning transformer model including at least a set of decoders;

*scheduling, by the scheduler, a batch of requests including the one or more requests for execution on an execution engine*;

*generating, by the execution engine, a first set of output tokens* by applying the transformer model to a first set of inputs for the batch of requests, wherein applying the transformer model comprises applying at least one batch operation to one or more input tensors associated with the batch of requests;

receiving, by a request processor, a new request from a client device, the new request including a sequence of input tokens;

*scheduling, by the scheduler, a second batch of requests additionally including the new request for execution on the execution engine*, the second batch of requests scheduled responsive to determining that the execution engine has memory available to execute the second batch of requests, wherein in a second set of inputs for the second batch of requests, a length of the sequence of input tokens for the new request is different from a length of an input for at least one request other than the new request; and

*generating, by the execution engine, a second set of output tokens* by applying the transformer model to the second set of inputs for the second batch.

**ANSWER:**

This paragraph states legal conclusions to which no response is required.  To the extent a response is required, Hugging Face states the '775 patent speaks for itself, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe the '775 patent.

22.    The '775 Patent is directed to an unconventional, non-routine technique for executing batches of requests on an inference system using a transformer model, including for large-scale generative AI.  The Patent-in-

Suit explains, *inter alia*, that "at one or more iterations, the inference system can modify the batch being executed on the execution engine by adding new incoming requests to the batch or removing completed requests from the batch." '775 patent at 2:62-64.

**ANSWER:**

This paragraph states legal conclusions to which no response is required. To the extent a response is required, Hugging Face states the '775 patent speaks for itself, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe the '775 patent. Hugging Face denies any remaining allegations of this paragraph.

23. The claimed invention overcame problems in the field, including latency and low throughput, by batching and scheduling requests at an iteration-level (i.e., dynamically batching or continuously batching). *See, e.g.*, '775 Patent at 3:2-6 (patented invention allows for the "response [to] be provided to the user faster" and allows adding new requests to avoid execution engine "being under-utilized"), 5:30-32 (discussing processing request by batches "to achieve higher processor utilization"), 24:28-31 ("dynamic batching allows the serving system 435 to dynamically adjust batches that are processed on execution engines such that the hardware of the execution engine can be fully utilized.").

**ANSWER:**

This paragraph states legal conclusions to which no response is required. To the extent a response is required, Hugging Face states the '775 patent speaks for itself, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe the '775 patent. Hugging Face denies any remaining allegations of this paragraph.

24. To the extent any marking or notice was required by 35 U.S.C. § 287, FriendliAI has complied with the marking requirements of 35 U.S.C. § 287. FriendliAI provides websites, which are accessible to the public without charge and which states that PeriFlow is protected by the '775 Patent. *See* Ex. 5 (https://friendli.ai/patents); Ex. 6 (https://periflow.ai/patents).

**ANSWER:**

Hugging Face states Exhibits 5 and 6 and the websites linked to the referenced URLs speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibits 5 and 6 and the websites linked to the referenced URLs.  Hugging Face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

25.     FriendliAI permits the public to sign-up for and/or use an embodiment of the patented system ("PeriFlow") via https://friendli.ai/periflow and https://periflow.ai/periflow.  *See* https://friendli.ai/periflow; https://periflow.ai/periflow.  On both websites, FriendliAI has marked the Periflow product by stating at the top of the page that "Our engine technology is protected by patents in the United States and Korea," and including a link entitled "Visit patents."  By clicking this link, the user is directed to the websites associating PeriFlow—the patented article—with the '775 Patent.  *See* Ex. 5 (https://friendli.ai/patents); Ex. 6 (https://periflow.ai/patents).

**ANSWER:**

Hugging Face states Exhibits 5 and 6 and the websites linked to the referenced URLs speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibits 5 and 6 and the websites linked to the referenced URLs.  Hugging Face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

## DEFENDANT'S [ALLEGED] INFRINGING ACTIVITIES

### The Accused Functionality

26.     Hugging Face offers an inference server for Large Language Models ("LLMs") called Text Generation Inference ("TGI").

**ANSWER:**

Hugging Face admits it offers a toolkit for deploying and serving Large Language Models which it calls Text Generation Inference.  Hugging Face denies the allegations of this

91337056.1

paragraph to the extent they mischaracterize or misrepresent the Text Generation Inference

toolkit.

> 27.     On information and belief, Hugging Face launched Text Generation
>         Inference on or around February 2023.

**ANSWER:**

> Admitted.

> 28.     An "important feature" of Text Generation Inference is continuous
>         batching of incoming requests.  *See* Ex. 7
>         (https://github.com/huggingface/text-generation-
>         inference/tree/main/router).  Hugging Face also refers to continuous
>         batching as "dynamic batching."  *See* Ex. 8 (https://huggingface.co/text-
>         generation-inference); *see also* https://github.com/huggingface/text-
>         generation-
>         Noinference/pull/258/commits/c6bb42286e3642261ff9bf7d376687684351
>         c00et (changing dynamic batching's name to continuous batching).

**ANSWER:**

Hugging Face states Exhibits 7 and 8 and the websites linked to the referenced URLs

speak for themselves, and denies the allegations of this paragraph to the extent they deviate from

or otherwise do not accurately reflect or describe Exhibits 7 and 8 and the websites linked to the

referenced URLs.  Hugging Face denies the allegations of this paragraph to the extent they

mischaracterize or misrepresent the Text Generation Inference toolkit.

> 29.     Continuous, or dynamic, batching involves "regularly running queries in
>         the same forward step of the LLM (a 'batch') and also removing them
>         when they are finished."  *See* Ex. 9.

**ANSWER:**

Hugging Face states Exhibit 9 speaks for itself, and denies the allegations of this

paragraph to the extent they deviate from or otherwise do not accurately reflect or describe

Exhibit 9.  Hugging Face denies the allegations of this paragraph to the extent they

mischaracterize or misrepresent the Text Generation Inference toolkit.

30.     According to Hugging Face, continuous batching enables "increased total throughput."  *See* Ex. 10 ([https://github.com/huggingface/text-generation-inference#readme](https://github.com/huggingface/text-generation-inference#readme)).  It further allows for optimal balance between "exploiting the hardware and perceived latency," as compared to previously existing inference systems with no continuous batching at all, which suffered from low throughput, and inference systems with static batching, which suffered from low latency.  *See* Ex. 7 ([https://github.com/huggingface/text-generation-inference/tree/main/router](https://github.com/huggingface/text-generation-inference/tree/main/router)).  *See id*.  Inference servers with continuous batching thus allow for obtaining the "sweet spot" of optimal throughput and latency.  *See id*.

**ANSWER:**

Hugging Face states Exhibits 10 and 7 and the websites linked to the referenced URLs speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibits 10 and 7 and the websites linked to the referenced URLs.  Hugging Face lacks sufficient knowledge or information to form a belief as to the truth of the allegations of the second and third sentences of this paragraph, and therefore denies them.  Hugging Face denies the allegations of this paragraph to the extent they mischaracterize or misrepresent the Text Generation Inference toolkit.

31.     For further example, Defendant's documentation explains how Text Generation Inference, which includes the continuous batching feature, enables high throughput and low latency:

Ex. 11 (https://huggingface.co/blog/inference-endpoints-llm) (emphasis added).

**ANSWER:**

Hugging Face states Exhibit 11 and the website linked to the referenced URL speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 11 and the website linked to the referenced URL.  Hugging Face denies the allegations of this paragraph to the extent they mischaracterize or misrepresent the Text Generation Inference toolkit.

**Defendant's [Alleged] Knowledge of the Patent-in-Suit**

32.  The Patent-in-Suit claims advancements in the large-scale transformer-based AI industry in which Defendant actively participates.  The claimed advancements were described in a paper, titled "Orca:  A distributed serving system for {Transformer-Based} generative models" (the "Orca paper"), published by Dr. Chun and his colleagues in July 2022.  *See* Ex. 3; *see also* Ex. 12 (https://www.usenix.org/conference/osdi22/presentation/yu).  The Orca

14

paper identifies FriendliAI as companies associated with the authors of the Orca paper.

**ANSWER:**

Hugging Face states Exhibits 3 and 12 and the website linked to the referenced URL speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibits 3 and 12 and the website linked to the referenced URL.  Hugging face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

33.     FriendliAI's website identifies its inference engine as Periflow, and further identifies Periflow as being also known as Orca.  *See* https://www.friendli.ai/; https://medium.com/friendliai/serve-generative-ai-models-like-t5-faster-than-ever-with-orca-32-8x-faster-for-t5-3b-a6ae560cfe25.

**ANSWER:**

Hugging Face states the websites linked to the referenced URLs speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe the websites linked to the referenced URLs.  Hugging face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

34.     FriendliAI's press release further identifies the Patent-in-Suit, and identifies that Periflow (aka Orca) practices the Patent-in-Suit.  *See* Ex. 13 (https://www.businesswire.com/news/home/20230720505202/en/Friendli AI-Launches-Public-Beta-of-PeriFlow-Cloud).

**ANSWER:**

Hugging Face states Exhibit 13 and the website linked to the referenced URL speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 13 and the website linked to the

referenced URL.  Hugging face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of this paragraph, and therefore denies them.

> 35.   On information and belief, Defendant has been and is aware of the Orca paper and/or the technology described in the Orca paper.  On information and belief, Defendant copied the technology described in the Orca paper in developing TGI, including the continuous batching (or dynamic batching) feature.

**ANSWER:**

Hugging Face denies any knowledge of the stated paper was sufficient to put it on notice of the '775 patent, any alleged infringement or the claims and allegations asserted in this action, and otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of the first sentence of this paragraph, and therefore denies them.  Hugging Face denies the allegations of the second sentence of this paragraph.

> 36.   A third-party article describing continuous batching (also known as dynamic batching or iteration-level scheduling) asserts that the Orca paper appears to be the "first" to describe such technique, and further recognizes that Defendant uses such infringing technique in TGI.  *See* Ex. 4 (https://www.anyscale.com/blog/continuous-batching-llm-inference).  On information and belief, Defendant has been and is aware of the aforementioned third-party article.

**ANSWER:**

Hugging Face states Exhibit 4 and the website linked to the referenced URL speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 4 and the website linked to the referenced URL.  Hugging face otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of the first sentence of this paragraph, and therefore denies them.  Hugging Face denies any awareness of the stated article was sufficient to put it on notice of the '775 patent, any alleged infringement or the claims and allegations asserted in this action, and

otherwise lacks sufficient knowledge or information to form a belief as to the truth of the allegations of the last sentence of this paragraph, and therefore denies them.

37.     On or around July 21, 2023, FriendliAI's counsel notified Defendant that Defendant is infringing the '775 patent and specifically identified how Defendant's TGI infringes the '775 patent.  FriendliAI's counsel further notified Defendant that FriendliAI's PeriFlow solution (also known as Orca), practices the '775 patent, and provided a copy of the press release explaining that PeriFlow is protected by the '775 patent.  FriendliAI's counsel demanded that Defendant cease and desist its infringing acts.

**ANSWER:**

Hugging Face admits it was contacted on July 21, 2023, on information and belief, by FriendliAI's counsel, and that counsel purported to notify Hugging Face of its alleged infringement of the '775 patent.  Hugging Face admits that counsel purported to identify how it allegedly infringes the '775 patent.  Hugging Face admits that counsel purported to notify it that FriendliAI's purported PeriFlow solution purportedly practices the '775 patent.  Hugging Face admits that counsel provided it with a purported copy of a press release.  Hugging Face admits counsel demanded it cease and desist allegedly infringing acts.  Hugging Face denies any remaining allegations of this paragraph.

38.     On information and belief, Defendant is and has been aware of the Patent-in-Suit and the fact that Defendant's TGI practices the claimed invention of the '775 Patent.  Despite its knowledge of the Patent-in-Suit and of its infringement of that Patent, and despite its knowledge that FriendliAI's PeriFlow solution is protected by the Patent-in-Suit, Defendant has continued to willfully infringe the Patent-in-Suit, obtaining the significant benefits of FriendliAI's innovation without seeking FriendliAI [sic] permission or paying any compensation to FriendliAI for access to this valuable technology.  For example, Defendant has continued to use TGI, including the continuous batching (or dynamic batching) feature, without a license after receiving the letter from FriendliAI's counsel, even though that letter notified Defendant of its infringing acts and demanded that Defendant cease and desist.

**ANSWER:**

Hugging Face denies the allegations of the first and second sentences of this paragraph.

Hugging Face admits it uses its Text Generation Inference toolkit.  Hugging Face denies the

remaining allegations of this paragraph.

## COUNT I:  INFRINGEMENT OF THE '775 PATENT

39.     FriendliAI incorporates by reference paragraphs 1-38.

**ANSWER:**

Hugging Face incorporates by reference paragraphs 1-38 above.

40.     The '775 Patent is valid and enforceable.

**ANSWER:**

Denied.

41.     Defendant has infringed, and continues to infringe, one or more claims of
        the '775 Patent under 35 U.S.C. § 271, either literally and/or under the
        doctrine of equivalents, by making, using, selling, and/or offering for sale
        by those claims, including products and services that incorporate Text-
        Generation Inference (the "Accused Functionality" or "TGI").
        Defendant's products and services that incorporate the Accused
        Functionality ("the Accused Products and Services") include, but are not
        limited to, Spaces, Inference Endpoints, Enterprise Hub (formerly known
        as Private Hub), HuggingChat, OpenAssistant, and Docker Hub
        containers.

**ANSWER:**

Hugging Face denies the allegations of the first sentence of this paragraph.  Hugging

Face admits FriendliAI accuses "Spaces, Inference Endpoints, Enterprise Hub (formerly known

as Private Hub), HuggingChat, OpenAssistant, and Docker Hub containers" of infringement but

denies such products infringe the '775 patent, or any other patent or intellectual property right

FriendliAI may own.

42.     As one example, Defendant infringes one or more claims of the '775
        Patent by using TGI, which includes the feature of continuous batching, or
        dynamic batching:

## Features

- Serve the most popular Large Language Models with a simple launcher
- Tensor Parallelism for faster inference on multiple GPUs
- Token streaming using Server-Sent Events (SSE)
- Continuous batching of incoming requests for increased total throughput
- Optimized transformers code for inference using flash-attention and Paged Attention on the most popular architectures
- Quantization with bitsandbytes and GPT-Q
- Safetensors weight loading
- Watermarking with A Watermark for Large Language Models
- Logits warper (temperature scaling, top-p, top-k, repetition penalty, more details see transformers.LogitsProcessor)
- Stop sequences
- Log probabilities
- Production ready (distributed tracing with Open Telemetry, Prometheus metrics)

Ex. 10 (https://github.com/huggingface/text-generation-inference#features) (emphasis added).  Defendant infringes one or more claims of the '775 Patent through continuous batching or dynamic batching at least by receiving requests for execution on a machine-learning transformer model, scheduling a batch of requests for execution, generating output by applying the transformer model, receiving a new request for execution, executing the new request in a second batch where the new request is a different length than at least one other request, and generating a second set of output tokens.  For example, Defendant has infringed, and continues to infringe, representative Claim 10 of the '775 Patent through continuous batching or dynamic batching, as shown in Exhibit 2.

**ANSWER:**

Hugging Face states Exhibit 10 and the website linked to the referenced URL speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 10 and the website linked to the referenced URL.  Hugging Face denies the allegations of this paragraph to the extent they mischaracterize or misrepresent the Text Generation Inference toolkit.  Hugging face denies the remaining allegations of this paragraph.

43.     Defendant has infringed, and continues to infringe, one or more claims of the '775 Patent under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making and/or using the Accused Products and

19

91337056.1

Services.  For example, Defendant makes and uses TGI to serve "the most popular Large Language Models" ("LLMs") within their Spaces, Inference Endpoints, and Enterprise Hub products and services.  *See* Ex. 8 (https://huggingface.co/text-generation-inference).  Defendant's documentation explains that TGI is "used in production at HuggingFace to power LLMs api-inference widgets," that are used on each of the Accused Products and Services.  Ex. 10 (https://github.com/huggingface/text-generation-inference).  For each of the Accused Products and Services, Defendant uses TGI on their own servers to provide services to clients and the public.  *See* Ex. 8 (https://huggingface.co/text-generation-inference).  For example, Defendant makes and provides a "Chat UI" to the public that uses TGI and is hosted on Spaces, that runs Defendant's servers.  *Id*.  For further example, Defendant also uses the Accused Functionality in publicly available products and services like HuggingChat and OpenAssistant.  *See* https://huggingface.co/blog/sagemaker-huggingface-llm; https://huggingface.co/chat; https://open-assistant.io.  For further example, Defendant also uses the Accused Functionality to provide services to customers using the Spaces, Inference Endpoints, and Enterprise Hub products and services.  *See, e.g.*, Ex. 8 (https://huggingface.co/text-generation-inference); *see also* https://huggingface.co/spaces; https://huggingface.co/blog/inference-endpoints-llm; https://huggingface.co/docs/inference-endpoints/main/en/others/runtime#inference-endpoints-version; https://huggingface.co/blog/introducing-private-hub.  For example, Defendant's documentation indicates that Text Generation Inference on Inference Endpoints is executed on Defendant's servers.  *See* https://huggingface.co/blog/inference-endpoints-llm.  For further example, Defendant's documentation indicates that Enterprise Hub allows customers to deploy services like Inference Endpoints, which uses TGI and is, on information and belief, hosted by Defendant on Defendant's servers.  *See* https://huggingface.co/blog/introducing-private-hub.

**ANSWER:**

Hugging Face states Exhibits 8 and 10 and the websites linked to the referenced URLs speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibits 8 and 10 and the websites linked to the referenced URLs.  Hugging Face denies the allegations of this paragraph to the extent they mischaracterize or misrepresent the Text Generation Inference toolkit.  Hugging Face denies the remaining allegations of this paragraph.

20

44.     Defendant has also infringed, and continues to infringe, one or more
claims of the '775 Patent under 35 U.S.C. § 271(a), either literally and/or
under the doctrine of equivalents, by selling, offering for sale, and/or
otherwise making available the Accused Products incorporating the
Accused Functionality.  For example, Defendant sells, offers for sale, and
otherwise makes available the Accused Products and Services, including
but not limited to Spaces, Inference Endpoints, and Enterprise Hub.  *See*
https://huggingface.co/pricing; https://huggingface.co/docs/inference-
endpoints/main/en/others/runtime#inference-endpoints-version;
https://huggingface.co/blog/inference-endpoints-llm;
https://huggingface.co/blog/introducing-private-hub;
https://huggingface.co/spaces.  For further example, Defendant also makes
available the Docker Hub container for customers to download and use the
Accused Functionality on their own system.  *See* Ex. 10
(https://github.com/huggingface/text-generation-inference#docker).

**ANSWER:**

Hugging Face states Exhibit 10 and the websites linked to the referenced URLs speak for

themselves, and denies the allegations of this paragraph to the extent they deviate from or

otherwise do not accurately reflect or describe Exhibit 10 and the websites linked to the

referenced URLs.  Hugging Face denies the allegations of this paragraph to the extent they

mischaracterize or misrepresent the Text Generation Inference toolkit.  Hugging Face denies the

remaining allegations of this paragraph.

45.     In addition or in the alternative, Defendant has also induced infringement,
and continues to induce infringement, of one or more claims of the '775
Patent under 35 U.S.C. § 271(b).  Defendant actively, knowingly, and
intentionally induces infringement of the '775 Patent by selling or
otherwise making available the Accused Products and Services, with the
knowledge and intent that third-party customers and users will use the
Accused Products and Services, including the Accused Functionality,
made available by Defendant to infringe the '775 Patent.  Defendant acts
with the knowledge and intent to encourage and facilitate third-party
infringement through the dissemination of the Accused Products and
Services and/or the creation and dissemination of supporting materials,
documentation, instructions, code and/or technical information related to
the Accused Products and Services, including the Accused Functionality.

**ANSWER:**

Denied.

21

91337056.1

46.     Defendant specifically intends and is aware that the ordinary and customary use of the Accused Products and Services would infringe the '775 Patent.  For example, Defendant sells and provides the Accused Products and Services, which when used in their ordinary and customary manner intended and instructed by Defendant, infringes one or more claims of the '775 Patent, including at least claim 10.  On information and belief, Defendant further provides supporting materials, documentation, instructions, code and/or technical information that cause their customers and partners to operate the Accused Products and Services for their ordinary and customary use.  *See*, *e.g.*, Ex. 8 ([https://huggingface.co/text-generation-inference/](https://huggingface.co/text-generation-inference/)); *see also* [https://huggingface.co/blog/falcon](https://huggingface.co/blog/falcon); [https://huggingface.co/blog/inference-endpoints-llm](https://huggingface.co/blog/inference-endpoints-llm); [https://github.com/huggingface/text-generation-inference#docker](https://github.com/huggingface/text-generation-inference#docker).  Defendant accordingly induces third parties to use the Accused Products and Services in their ordinary and customary way to infringe the '775 Patent, knowing, or at least being willfully blind to the fact, that such use constitutes infringement of the '775 Patent.

**ANSWER:**

Hugging Face states Exhibit 8 and the websites linked to the referenced URLs speak for themselves, and denies the allegations of this paragraph to the extent they deviate from or otherwise do not accurately reflect or describe Exhibit 8 and the websites linked to the referenced URLs.  Hugging Face denies the allegations of this paragraph to the extent they mischaracterize or misrepresent the Text Generation Inference toolkit.  Hugging Face denies the remaining allegations of this paragraph.

47.     In addition or in the alternative, Defendant contributes to the infringement by third parties, such as customers and users, of one or more claims of the '775 Patent under 35 U.S.C. § 271(c), by making, selling and/or offering for sale in the United States, and/or importing into the United States, Accused Products, which include the Accused Functionality, knowing that those products constitute a material part of the inventions of the '775 Patent, knowing that those products are especially made or adapted to infringe the '775 Patent, and knowing that those products are not staple articles of commerce suitable for substantial non-infringing use.

**ANSWER:**

Denied.

48.     On information and belief, Defendant has had knowledge of and notice of the '775 Patent and its infringement since at least the launch date of the Accused Functionality, and no later than July 21, 2023 when, on information and belief, Defendant received a letter notifying Defendant of the '775 Patent and its infringement.

**ANSWER:**

Denied.

49.     On information and belief, Defendant's infringement of the '775 Patent has been, and continues to be, willful and deliberate since at least the launch date of the Accused Functionality, and no later than July 21, 2023 when, on information and belief, Defendant received a letter notifying Defendant of the '775 Patent and its infringement.

**ANSWER:**

Denied.

50.     FriendliAI has been and continues to be damaged by Defendant's infringement to the '775 Patent and will suffer irreparable injury unless the infringement is enjoined by this Court.

**ANSWER:**

Denied.

51.     Defendant's conduct in infringing the '775 Patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**ANSWER:**

Denied.

<u>**RESPONSE TO PLAINTIFF'S PRAYER FOR RELIEF**</u>

Hugging Face denies that FriendliAI is entitled to any of the relief requested in its prayer for relief, or any relief whatsoever.

<u>**RESPONSE TO PLAINTIFF'S JURY DEMAND**</u>

FriendliAI's jury demand does not state any allegations for which a response is required. To the extent a response is required, Hugging Face denies any factual allegations therein.

91337056.1

## AFFIRMATIVE DEFENSES

Hugging Face denies all allegations not expressly admitted above.  Without prejudice to the responses and denials set forth in Hugging Face's answer, and without admitting any allegations of the complaint not otherwise admitted, Hugging Face asserts the following defenses:

### First Affirmative Defense

Hugging Face does not, and has not infringed, literally or under the doctrine of equivalents, willfully or otherwise, any valid, properly construed claim of the '775 patent either directly, indirectly, contributorily, by inducement, or in any other manner.

### Second Affirmative Defense

The claims of the '775 patent are invalid for failure to comply with and/or satisfy one or more of the conditions and requirements of Title 35 of the United States Code, including but not limited to §§ 101, 102, 103, 112, 116, and/or 120 thereof.

### Third Affirmative Defense

FriendliAI is barred by 35 U.S.C. § 288 from recovering any costs associated with this suit.

### Fourth Affirmative Defense

Plaintiff is not entitled to any damages or any other remedy under 35 U.S.C. §§ 284 or 285 with respect to any alleged infringement by Hugging Face to the extent that Plaintiff and/or its licensees have not complied with the notice requirements of 35 U.S.C. § 287.  On information and belief, through allowing the public to sign-up for and/or use a purported embodiment of the alleged patented system, FriendliAI has licensed the '775 patent to multiple individuals or entities whose products implement or utilize the purported invention(s) of the '775 patent.  The

91337056.1

licensed individuals or entities, however, have not marked their respective products with the '775 patent and/or have otherwise failed to comply with the notice requirements of 35 U.S.C. § 287.

### Fifth Affirmative Defense

The complaint fails to state a claim for relief against Hugging Face that would qualify this as an exceptional case under 35 U.S.C. § 285.

### Sixth Affirmative Defense

The complaint fails to state a claim upon which relief can be granted.

### Seventh Affirmative Defense

On information and belief, by virtue of prosecution proceedings before the U.S. Patent and Trademark Office of the patent application leading to the '775 patent, FriendliAI is estopped from maintaining that any valid claim of the '775 patent is infringed by Hugging Face.

Hugging Face expressly reserves the right to supplement and/or amend its answer to the complaint, including but not limited to supplementation and/or amendment of its defenses and amplifications of denials, as additional facts and information become known through the course of this case and discovery.

### COUNTERCLAIM

Hugging Face, Inc. (Hugging Face) for its counterclaim against FriendliAI Inc. (FriendliAI), alleges as follows:

### <u>NATURE OF THE ACTION</u>

1.      This counterclaim action is for declaratory judgment of invalidity and/or noninfringement of one or more claims of U.S. Patent No. 11,442,775 (the '775 patent).

2.      On information and belief, FriendliAI is the assignee of the '775 patent.

## THE PARTIES

3.      Hugging Face, Inc. is a company organized and existing under the laws of the State of Delaware, with its principal place of business at 20 Jay St., Ste. 620, Brooklyn, New York, 11201.

4.      On information and belief, FriendliAI is a company organized and existing under the laws of the Republic of Korea, with its principal place of business at 5F, AMC Tower, 222 Bongeunsa-ro, Gangnam-gu, Seoul, 06135, Korea.

## JURISDICTION

5.      This Court has subject matter jurisdiction over these counterclaim actions for declaratory judgment pursuant to 28 U.S.C. §§ 1331, 1338, 2201, and 2202 based on an actual controversy between Hugging Face and FriendliAI arising under the Patent Laws of the United States, 35 U.S.C. §§ 100 *et seq*.

6.      The Court has personal jurisdiction over FriendliAI based on the filing of this lawsuit, among others things, in this District.

7.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1391(b)-(d) and 1400(b). As set forth above, FriendliAI is subject to personal jurisdiction based on the filing of this lawsuit in this District.  Venue is therefore proper pursuant to 28 U.S.C. § 1391(b)-(d).

## STATEMENT OF FACTS

8.      A real and immediate controversy exists between Hugging Face and FriendliAI concerning FriendliAI's allegations that Hugging Face infringes the '775 patent.

9.      On July 28, 2023, FriendliAI filed the instant lawsuit wherein it accuses Hugging Face of infringing the '775 patent.

## COUNT I
### (Declaratory Judgment of Invalidity of the '775 patent)

10.     Hugging Face repeats and incorporates by reference each of the foregoing paragraphs of its counterclaim.

11.     The claims of the '775 patent are invalid for failure to comply with and/or satisfy one or more of the conditions and requirements of patentability specified in Title 35 of the United States Code, including but not limited to 35 U.S.C. §§ 101, 102, 103, 112 and/or 120, and/or based on other judicially-created bases for invalidation.

12.     The claims of the '775 patent are invalid under 35 U.S.C. § 101 because the claimed invention(s) utilize conventional components in their normal and expected manner to perform the abstract idea of "receiving" "requests," "scheduling" "a batch," and "generating" "output[s]."

13.     The claims of the '775 patent are invalid as anticipated by the prior art because one or more elements of the claimed invention(s) was known or used by others in this country, or patented or described in a printed publication in this or a foreign country, before the invention thereof by the applicants, or patented or described in a printed publication in this or a foreign country or in public use or on sale in this country, more than one year prior to the date of application(s) that led to the '775 patent.

14.     The claims of the '775 patent are invalid as obvious in view of the prior art because any differences between the claims and the prior art are such that the claimed subject matter as a whole would have been obvious at the time of invention to a person having ordinary skill in the relevant art. A person having ordinary skill in the relevant art would have had reason to combine the teachings of the prior art to achieve the claimed invention(s) and would have had a reasonable expectation of success in doing so.

91337056.1

15.    The '775 patent does not contain a written description of the claimed invention(s), and of the manner and process of making and using same, in such full, clear, concise, and exact terms as to demonstrate to a person of ordinary skill in the art that the alleged inventors were in possession of the full scope of the subject matter of the claims contained therein.

16.    One or more claims of the '775 patent do not particularly point out and distinctly claim the subject matter which the inventors regard as the invention.

17.    As a result of FriendliAI's allegations that Hugging Face infringes the '775 patent, an actual and justiciable controversy exists between Hugging Face and FriendliAI regarding the validity of the '775 patent.

18.    Therefore, Hugging Face is entitled to a judgment from this Court declaring the '775 patent is invalid.

## COUNT II
### (Declaratory Judgment of Noninfringement of the '775 patent)

19.    Hugging Face repeats and incorporates by reference each of the foregoing paragraphs of its counterclaim.

20.    FriendliAI has accused Hugging face of infringing claims of the '775 patent.

21.    Hugging Face has not and does not make, use, offer to sell, sell, or import any product which infringes any valid claim of the '775 patent either directly or under the doctrine of equivalents.

22.    Hugging Face has not and does not induce or contribute to the alleged infringement of the '775 patent.

23.    As a result of FriendliAI's allegations that Hugging Face infringes the '775 patent, an actual and justiciable controversy exists between Hugging Face and FriendliAI regarding Hugging Face's noninfringement of the '775 patent.

91337056.1

24.     Therefore, Hugging Face is entitled to a judgment from this Court declaring Hugging Face does not infringe any valid claim of the '775 patent.

### EXCEPTIONAL CASE

25.     This case is an exceptional one, and Hugging Face is entitled to and seeks an award of its reasonable attorneys' fees and costs under 35 U.S.C. § 285.

### JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Hugging Face demands a trial by jury on all issues so triable.

### PRAYER FOR RELIEF

Wherefore, Hugging Face prays the Court enter judgment in its favor and against FriendliAI as follows:

a)  dismissing the complaint with prejudice and denying each request for relief made by FriendliAI therein;

b)  declaring the claims of the '775 patent invalid;

c)  declaring that Hugging Face has not infringed and does not infringe any valid claim, if any, of the '775 patent, either directly or indirectly, and either literally or under the doctrine of equivalents;

d)  granting Hugging Face judgment in its favor on FriendliAI's claims;

e)  granting Hugging Face judgment in its favor on its counterclaims;

f)  declaring this case exceptional in favor of Hugging Face pursuant to 35 U.S.C. § 285;

g)  declaring that Hugging Face is the prevailing party and awarding Hugging Face its costs and attorneys' fees; and

h)  awarding Hugging Face such other and further relief to which it may be entitled.

POLSINELLI PC

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
  *Attorneys for Defendant Hugging Face, Inc.*

OF COUNSEL:

Jason A. Wietjes
POLSINELLI PC
2950 N. Harwood St., Ste. 2100
Dallas, TX 75201
Tel.:  (214) 661-5519
jwietjes@polsinelli.com

September 22, 2023

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 22, 2023, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on September 22, 2023, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Andrew L. Brown<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Fl.<br>1313 N. Market St.<br>Wilmington, DE 19801<br>Tel.:  (302) 984-6000<br> *Attorneys for Plaintiff FriendliAI Inc.* | *BY ELECTRONIC MAIL* |
| Michael J. Sacksteder<br>Shreyas A. Kale<br>John M. DiBaise<br>FENWICK &WEST LLP<br>555 California St., 12th Fl.<br>San Francisco, CA 94104<br>Tel.:  (415) 875-2300<br> *Attorneys for Plaintiff FriendliAI Inc.* | *BY ELECTRONIC MAIL* |
| Jessica Kaempf<br>FENWICK & WEST LLP<br>401 Union St., 5th Fl.<br>Seattle, WA 98101<br>Tel.:  (206) 389-4550<br> *Attorneys for Plaintiff FriendliAI Inc.* | *BY ELECTRONIC MAIL* |

/s/ *Stephen J. Kraftschik*

Stephen J. Kraftschik (#5623)

91337056.1