# Exhibit Q

**From:** Jason Wietjes <JWietjes@Polsinelli.com>
**Sent:** Tuesday, March 26, 2024 10:49 AM
**To:** Jessica Kaempf <jkaempf@fenwick.com>
**Cc:** Annya Shafranskaya <AShafranskaya@fenwick.com>; Stephen J. Kraftschik <skraftschik@polsinelli.com>; Michael Sacksteder <MSacksteder@Fenwick.com>; FriendliAI v Hugging Face <FriendliAIvHuggingFace@fenwick.com>; Brown, Andrew L. <abrown@potteranderson.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>; Jahn Braquet <JBraquet@Polsinelli.com>
**Subject:** RE: FriendliAI Inc., v. Hugging Face, Inc., USDC D. Del., Case No. 1:23-CV-00816-MN | CoFrrespondence re Discovery

**\*\* EXTERNAL EMAIL \*\***

Jessica,

Further to below, your email summary misstates our discussion in many key respects. The continued email posturing is counterproductive and not conducive to advancing discovery in the case. Hugging Face is committed to producing the documents and information it's required to produce in connection with FriendliAI's discovery requests and as otherwise required by the Court's schedule, and will continue to work with FriendliAI to address search terms and other ESI-related issues as expeditiously as possible. We're currently having to expend considerable time addressing and responding to FriendliAI's interim emails further demanding that Hugging Face produce additional documents and information on extremely short and unreasonable timelines. As we discussed last week, we first need to reach agreement, to the extent possible, on a set of search terms that will allow Hugging Face to make an initial production to FriendliAI. If FriendliAI believes there are deficiencies subsequent to such production, we can have that conversation. Right now, FriendliAI's demands are only working to slow the process on our end.

<u>Production of Financial Information</u>
As stated in its 1/15/2023 production of core technical documents, Hugging Face doesn't maintain sales figures or financial information on an application-by-application basis. Hugging Face communicated at that time it's willingness to meet and confer with FriendliAI on what financial information is to be produced. FriendliAI ignored Hugging Face's offer to meet and confer and instead waited until 2/12/2024 to send Hugging Face an omnibus discovery letter, insisting that Hugging Face prematurely produce a plethora of information well beyond the requirements associated with the 1/15 deadline.

Hugging Face once again here informs that it doesn't maintain financial information broken down on an application-by-application basis, either in its P&Ls or as otherwise reflected in general revenue/profit/cost documentation. As we discussed last week, Hugging Face is working within its accounting systems to

determine how it can parse its financial information to comply with FriendliAI's demands.  As FriendliAI has been informed, the same is true of usage data.  To the extent Hugging Face is able to isolate the demanded financial information and usage data on an application-by- application basis, it will produce it.  Likewise, to the extent revenue attributable to the HFOIL license is maintained separately by Hugging Face, Hugging Face will produce that information.  Hugging Face will otherwise produce its financial information as maintained in the ordinary course of business.  Hugging Face will produce relevant license agreements.  Hugging Face intends to produce this information by the end of this month, as discussed.

Core Technical Documents
Hugging Face hasn't agreed to any further undertaking in connection with its compliant 1/15/2023 production of core technical documents.  FriendliAI's characterizations and misstatements to the contrary are inaccurate and disputed.  Hugging Face has provided FriendliAI with publicly available documents that fully and clearly outline how the accused functionality within the accused products work, and the source code for the accused functionality is readily available.  Hugging Face is at a loss as to what else FriendliAI wants.  Hugging Face has met its burden, and it isn't required to produce any and all documents in its possession that in some way show or relate to how the accused products work.  It's simply required to provide documents "sufficient to show" how the accused products work, which it's clearly done.  It's Hugging Face's position that any further documents or information that may pertain to how the accused products work are subject to document discovery, and any such documents and information will be produced accordingly in connection with the parties' corresponding obligations.  At no time did Hugging Face otherwise state that no other technical documentation exists beyond what's "sufficient to show" how the accused products work.  As the parties have discussed multiple times, Hugging Face fully expects there are additional documents that will pertain to how the accused products work.  Once again, any such documents will produced during the course of discovery.  Hugging Face considers this issue as closed.

FriendliAI's assertions that Hugging Face has somehow misled it are false and not well-taken.  Discovery is in its early stages and ongoing.  Any discovery of non-public source code is subject to the procedures outlined in the protective order entered in the case.  To date, FriendliAI hasn't followed those procedures.  ==As with technical documentation, at no time did Hugging Face ever state or represent it doesn't maintain non-public code.==  Any contrary belief FriendliAI may have formed points to its own shortcomings in conducting its requisite diligence to determine in good faith that Hugging Face in fact infringes the asserted patents.  As FriendliAI is aware, the source code for the accused functionality is fully available.  All one would have to do is review this code to understand its relationship to other application-specific code, thereby confirming the existence of such code.  Further, it's Hugging Face fails to see how such code is relevant in any respect.  It's become clear FriendliAI hasn't sufficiently undertaken to make these determinations for itself and is instead attempting to shoehorn its lack of diligence through Hugging Face's preliminary "sufficient to show" obligation.  This is inappropriate and not in accordance with the Court's rules and procedures.  Hugging Face reserves all of its rights, including under 35 U.S.C. § 285, accordingly.

FriendliAI's Document Requests
Hugging Face will confirm the sources it intends to search in connection with the parties reaching an agreement on the search terms under consideration.  We're awaiting our client's further input and confirmation on the list most recently provided by FriendliAI and will let you know what further agreements Hugging Face is amendable to as soon as we hear back.

Organization Chart
As has been communicated, Hugging Face will produce an org chart.  It intends to make this production by

the end of the month.  Hugging Face didn't agree to a blanket production of a list of employees and their roles/titles.  Subject to discovery objections, Hugging Face will provide the names of Hugging Face employees who worked on the development of the accused products, either in document form, to the extent such documentation is maintained by Hugging Face, or otherwise in response to any properly served discovery request by FriendliAI.

Code Names

Hugging Face considers this matter closed.  Should any additional code name be discovered, FriendliAI may of course conduct discovery related to such code name as it deems necessary.  Hugging Face reserves its rights to object to such discovery accordingly.

Version Number

FriendliAI may undertake to review Hugging Face's code to determine version numbers as it deems necessary.  Hugging Face didn't agree to review its code to compile version numbers, nor will it do so.

Purported Initial Non-Infringement Contention Deadline

As FriendliAI knows, it's not standard DE practice to require the defendant to provide the plaintiff with initial-noninfringement contentions.  This deadline isn't set forth in the Court's standard scheduling order, nor did FriendliAI insert this language into the body of the draft scheduling order it provided to Hugging Face for consideration.  Instead, FriendliAI snuck this purported requirement into its exhibit to the schedule, buried after a comma succeeding Hugging Face's standard deadline to provide preliminary invalidity contentions, no less.  At no time did FriendliAI bring this to Hugging Face's attention or initiate a discussion with Hugging Face about this purported requirement.  It's also telling that FriendliAI didn't give itself a reciprocal deadline to provide Hugging Face with its initial validity contentions.  Hugging Face doesn't appreciate such sandbagging and gamesmanship.  As we discussed last week, had Hugging Face known about this purported deadline, and had FriendliAI not obscured it, Hugging Face would've objected, and wouldn't have agreed to provide preliminary noninfringement contentions, at least without a corresponding requirement for FriendliAI to provide preliminary validity contentions.  Under the circumstances, Hugging Face doesn't believe this is a dispute the Court will appreciate should FriendliAI persist.

Hugging Face will answer contention interrogatories served by FriendliAI subject to any applicable objections and in accordance with the time allowed by the Federal Rules of Civil Procedure.  If FriendliAI is proposing an amendment to the Court's schedule related to claim construction deadlines, please let us know what is being proposed as soon as possible so that we may fully consider with our client.

Jason Wietjes
214.661.5519
214.450.2193 (cell)

**Sent:** Friday, March 8, 2024 12:28 PM
**To:** 'Jessica Kaempf' <jkaempf@fenwick.com>; Annya Shafranskaya <AShafranskaya@fenwick.com>; Stephen J. Kraftschik <skraftschik@polsinelli.com>
**Cc:** Michael Sacksteder <MSacksteder@Fenwick.com>; FriendliAI v Hugging Face <FriendliAIvHuggingFace@fenwick.com>; Brown, Andrew L. <abrown@potteranderson.com>; Palapura, Bindu A. <bpalapura@potteranderson.com>; Moore, David E. <dmoore@potteranderson.com>; Jahn Braquet <JBraquet@Polsinelli.com>
**Subject:** RE: FriendliAI Inc., v. Hugging Face, Inc., USDC D. Del., Case No. 1:23-CV-00816-MN | Correspondence re Discovery

Jessica,

Thank you for your email.

Hugging Face is in the process of reviewing FriendliAI's proposal regarding search terms. We'll follow up with you in this regard.

With respect to additional "core technical documents" that FriendliAI is requesting, we again confirm Hugging Face doesn't maintain anything additional that isn't publicly available. Again, the open source code and user manuals for TGI are all public and available on the Hugging Face website. Likewise, the source code for Spaces, Inference Endpoints, Enterprise Hub, Hugging Face Hub and HuggingChat is publicly available, as are the user manuals for these applications. Hugging Face additionally notes the OpenAssistant application isn't a Hugging Face product for which Hugging Face maintains non-public information. Docker Hub itself isn't a separate application and simply functions as a repository for the subject open source code. In sum, any core technical documents FriendliAI believes it needs are publicly available and equally accessible to FriendliAI.

I've again asked for confirmation that there are no other internal code names for the subject project, and will provide that confirmation just as soon as I receive it. Again, it's now been communicated to us more than once that there are no such additional code names. For version numbers, those are all referenced directly in the publicly available open source code. Hugging Face will not review code to summarize version numbers for FriendliAI, and reiterates its position that such version numbers are irrelevant.

We've also conferred with Hugging Face regarding the org chart and sales information, and Hugging Face will be producing relevant, responsive documentation. We're actively working to get this to you as soon as possible.

Jason Wietjes
214.661.5519
214.450.2193 (cell)