IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| FRIENDLIAI INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) C.A. No. 23-816 (MN) |
| | ) |
| HUGGING FACE, INC., | ) |
| | ) |
| Defendant. | ) |

**HUGGING FACE, INC.'S NOTICE OF
RULE 30(b)(6) DEPOSITION OF FRIENDLIAI INC.**

Please take notice that pursuant to Federal Rule of Civil Procedure 30(b)(6) Defendant Hugging Face, Inc. will take the deposition upon oral examination of Plaintiff FriendliAI Inc. on July 5, 2024, at 9:00 am CT in Dallas, TX. The deposition will occur at Polsinelli PC, 2950 N. Harwood St., Ste. 2100, Dallas, TX 75201 or at another location mutually agreed upon by counsel, or by virtual deposition, on the topics set forth in Exhibit A, through one or more of its officers, directors or managing agents, or persons who consent to testify on Plaintiff's behalf.

The deposition will be taken before an officer authorized by law to administer oaths and will be recorded by both stenographic and videographic means. The deposition will proceed in accordance with the Federal Rules of Civil Procedure, the Local Rules of Civil Practice and Procedure of the United States District Court for the District of Delaware and the Orders entered in the action, as applicable, and will continue from day-to-day until completed, or as otherwise ordered by the Court or agreed by the parties.

95586777.2

| | |
|---|---|
| | POLSINELLI PC |
| OF COUNSEL: | */s/ Stephen J. Kraftschik* <br> Stephen J. Kraftschik (#5623) <br> 222 Delaware Avenue, Suite 1101 <br> Wilmington, DE 19801 <br> (302) 252-0920 <br> skraftschik@polsinelli.com <br> *Attorneys for Defendant Hugging Face, Inc.* |
| Jason A. Wietjes <br> POLSINELLI PC <br> 2950 N. Harwood St., Ste. 2100 <br> Dallas, TX 75201 <br> Tel: (214) 661-5519 <br> jwietjes@polsinelli.com | |
| June 17, 2024 | |

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2024, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 17, 2024, upon the following in the manner indicated:

| | |
|---|---|
| David E. Moore<br>Bindu A. Palapura<br>Andrew L. Brown<br>POTTER ANDERSON & CORROON LLP<br>Hercules Plaza, 6th Fl.<br>1313 N. Market St.<br>Wilmington, DE 19801<br>Tel.: (302) 984-6000<br>  *Attorneys for Plaintiff FriendliAI Inc.* | *BY ELECTRONIC MAIL* |
| Michael J. Sacksteder<br>Shreyas A. Kale<br>Samantha Ong<br>FENWICK & WEST LLP<br>555 California St., 12th Fl.<br>San Francisco, CA 94104<br>Tel.: (415) 875-2300<br>  *Attorneys for Plaintiff FriendliAI Inc.* | *BY ELECTRONIC MAIL* |
| Jessica Kaempf<br>FENWICK & WEST LLP<br>401 Union St., 5th Fl.<br>Seattle, WA 98101<br>Tel.: (206) 389-4550<br>  *Attorneys for Plaintiff FriendliAI Inc.* | *BY ELECTRONIC MAIL* |

*/s/ Stephen J. Kraftschik*
Stephen J. Kraftschik (#5623)

95586777.2

## Exhibit A

## DEFINITIONS

1. "Document" is synonymous in meaning and equal in scope to its usage in Federal Rule of Civil Procedure 34(a)(1)(A), which states "any designated documents or electronically stored information—including writings, drawings, graphs, charts, photographs, sound recordings, images, and other data or data compilations—stored in any medium from which information can be obtained either directly or, if necessary, after translation by the responding party into a reasonably usable form." The term "document" refers to any document now or at any time in FriendliAI's possession, custody, or control. A person is deemed in control of a document if the person has any ownership, possession or custody of the document, or the right to secure the document or a copy thereof from any person or public or private entity having physical possession thereof.

2. "FriendliAI," "you" or "your" means Plaintiff FriendliAI Inc., its subsidiaries, divisions, predecessor and successor companies, affiliates, parents, any partnership or joint venture to which it may be a party, and each of its employees, agents, officers, directors, representatives, consultants, accountants and attorneys, including any person who served in any of these capacities during any relevant time period.

3. "Asserted Patents" means any one or all of U.S. Patent Nos. 11,442,775 ('775 patent) and 11,836,520 ('520 patent).

4. "Asserted Claims" means each claim in the Asserted Patents that FriendliAI contends or may contend that Hugging Face has infringed or is infringing.

5. "Accused Products" means the accused products accused of infringement by FriendliAI in the action.

6. "Prior Art" means all documents, information, acts or things that qualify as prior art under any subsection of 35 U.S.C. §§ 102 and 103, including any system, method, apparatus, publication, patent, or use.

7. "Person" means any natural person or any legal entity, including but not limited to, any business or governmental entity, organization, or association.

8. "Relate," "related," or "relating" means consisting of, referring to, reflecting, concerning, or being in any way logically or factually connected with the matter discussed.

9. "Communication" means the transmission of information in any form, including, without limitation, written, oral, or electronic transmissions.

10. The terms "and" and "or" should be construed either conjunctively or disjunctively as necessary to bring within the scope of the topic all answers that might otherwise fall outside the scope of the topic.

11. The terms "all," "any," or "each" encompass any and all of the matter discussed.

12. "Including" means including, but not limited to.

13. The use of the singular form includes the plural and vice versa.

14. The use of present tense includes past tense and vice versa.

## TOPICS FOR EXAMINATION

1. The factual bases for FriendliAI's admissions, denials, averments, and other responses contained in its complaint and live pleadings in the action.

2. The factual bases for FriendliAI's answer and defenses to Hugging Face's counterclaims in the action.

3. The ownership of the asserted patents.

4. Correspondence and communications between FriendliAI and Hugging Face.

95586777.2

5. FriendliAI's decisions to develop its products, including the FriendliAI products identified in answer to Hugging Face's interrogatories.

6. The research, design, development and production of FriendliAI's products, including the FriendliAI products identified in answer to Hugging Face's interrogatories, including the amount of money and time invested by FriendliAI in the research, design, development, and production of such products.

7. The properties, attributes, and function of the example(s) and invention(s) purportedly disclosed and claimed by the asserted patents.

8. The conception and reduction to practice of an invention(s) purportedly covered or claimed by the asserted patents.

9. The alleged priority date(s) of the asserted patents and the conception and first reduction to practice of the inventions purportedly covered or claimed by the asserted patents, including the identification of the applicable dates, the persons involved, the circumstances, and the documents relating thereto.

10. FriendliAI's knowledge, notice, and/or consideration of the Hugging Face products accused of infringement in the action, including the person(s) at FriendliAI who first learned of any of such products, the circumstances through which they first learned of such products, and any analysis of such products, including the alleged infringement of such products.

11. FriendliAI's pre-suit investigation of the infringement alleged in the action.

12. The contributions of each inventor to the subject matter claimed by the asserted patents, including the facts which led to the decision to include the persons listed on the faces of the asserted patents as inventors.

95586777.2

13. The prosecution of the asserted patents, including: (i) any rejection of claims during prosecution; (ii) any responses or amendments submitted by or on behalf of the inventors; (iii) any declarations submitted by or on behalf of the inventors; (iv) any interviews with the Examiner; (v) any information disclosure statements submitted during prosecution; and (vi) the identity of the persons, committees or groups involved in the decision(s) to prepare, file, and prosecute the application(s) leading to the asserted patents.

14. The prosecution of any related applications or related patents to the asserted patents, including any foreign filings or patents, as well as any other proceedings before the United States Patent and Trademark Office or any foreign patent office regarding any related applications or related patents to the asserted patents.

15. FriendliAI's licensing policy or strategy relating to in-licensing technology and/or out-licensing patent rights that FriendliAI has or has had at any time.

16. FriendliAI's attempts to obtain a license to manufacture, use, offer to sell, sell, or import subject to any patent owned by or assigned to any third party.

17. Any patent owned by, assigned to, or licensed to or by FriendliAI that FriendliAI asserts covers, claims, or protects systems, methods, and/or components of the Hugging Face products accused of infringement in the action.

18. FriendliAI's consideration of and/or attempts to design around or develop alternatives to any invention(s) claimed in any third-party patent.

19. All search results and/or opinions provided to or obtained by FriendliAI relating to whether the Hugging Face products accused of infringement in the action infringe the asserted patents, whether the asserted patents are valid or invalid, and whether the asserted patents are enforceable or unenforceable.

95586777.2

20. Any offers for sale, sales, public disclosures, or public uses of any FriendliAI product FriendliAI contends embodies any invention(s) purportedly covered or claimed by the asserted patents.

21. The decision to market and sell any FriendliAI product FriendliAI contends embodies any invention(s) purportedly covered or claimed by the asserted patents, including any market studies, the potential market for each such product, potential competitors, and third-party patent rights.

22. The disclosure and/or use of "continuous batching" and "iterative batching" by FriendliAI.

23. FriendliAI's knowledge, awareness, and/or identification of the market and/or market segments for the accused products.

24. FriendliAI's knowledge, awareness, and/or identification of the market and/or market segments for any FriendliAI product FriendliAI contends embodies any invention(s) purportedly covered or claimed by the asserted patents.

25. FriendliAI's business plans and forecasts for any FriendliAI product FriendliAI contends embodies any invention(s) purportedly covered or claimed by the asserted patents, including the projected, expected, anticipated, and/or actual units sold or imported, price, gross and net revenue, and/or gross and net profit from sales of such products.

26. The cost of producing, developing, servicing, and/or maintaining any FriendliAI product FriendliAI contends embodies any invention(s) purportedly covered or claimed by the asserted patents.

27. FriendliAI's marketing plans for any FriendliAI product FriendliAI contends embodies any invention(s) purportedly covered or claimed by the asserted patents, including any

promotional materials and advertisements, internal or external market analyses, market research, market surveys, market share studies or analysis, market demand studies or analysis, market segment studies or analysis, and/or competitive studies or analysis.

28. Products that purportedly compete with any FriendliAI product FriendliAI contends embodies any invention(s) purportedly covered or claimed by the asserted patents, including any analyses of the strengths or weaknesses of those products compared to the Hugging Face products accused of infringement in the action.

29. Licenses to which FriendliAI is a party for the technology in the general field of the asserted patents.

30. Internal and external communications relating to FriendliAI's purported "continuous" and "iterative" batching feature(s) of the accused products.

31. Internal and external communications relating to Hugging Face.

32. Internal and external communications relating to the asserted patents.

33. Internal and external communications relating to this action.

34. Any agreement between FriendliAI and any third party relating to the asserted patents, the subject matter purportedly covered or claimed by the asserted patents or any related patent(s) or related application(s) to the asserted patents, including assignments, licenses, development agreements, sales agreements, advertising agreements, and marketing agreements.

35. Prior art to the asserted patents, including any prior art search, any analysis of the validity or scope of any of claim of the asserted patents, and any analysis of the scope and content of the prior art to the asserted patents.

36. The factual bases for any allegation that any objective indicia of nonobviousness supports the nonobviousness of the subject matter purportedly covered and claimed by the

asserted patents, including unexpected results, long-felt but unmet need, teaching away, praise, industry recognition, skepticism, copying, and commercial success.

37. Any alleged nexus or other connection between any product purportedly covered or claimed by the asserted patents and the subject matter purportedly covered or claimed by the asserted patents.

38. FriendliAI's knowledge of any publications, news articles, journal articles, news releases or other press coverage relating to any product purportedly covered or claimed by the asserted patents.

39. The budgeted and actual costs of the research, design, development, and manufacture/production of any product purportedly covered or claimed by the asserted patents.

40. The pricing, pricing strategy, and analysis of pricing for any product purportedly covered or claimed by the asserted patents.

41. The market in which any product purportedly covered or claimed by the asserted patents competes and has competed, both before and after product launch, including any market share or demand assessment for any such product or any product that purportedly competes with any such product.

42. Any valuation of the asserted patents.

43. Any alternative technology to the invention(s) purportedly covered or claimed by the asserted patents that existed at the purported priority date for the asserted patents.

44. The state of the art in the subject field of invention at the time of the purported priority date for the asserted patents.

45. FriendliAI's discovery responses and answers in this action, including its responses and answers to Hugging Face's requests for production and interrogatories.

95586777.2

46. FriendliAI's document retention and destruction policies that are in place now or have been at any time since FriendliAI anticipated litigation with Hugging Face.

47. The authenticity of documents produced by FriendliAI in this action.

48. Documents and things concerning the foregoing topics.

49. Persons knowledgeable about the foregoing topics.

50. The steps taken by each person designated to testify about any of the foregoing topics to acquire all information known or reasonably available to FriendliAI about each such topic including all documents reviewed, discussed or prepared in connection with or in anticipation of the testimony by each designated witness, all communications with any person who provided any information about which testimony is provided or sought, and the identity of each person consulted to obtain information about which testimony is provided or sought.

95586777.2