IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| FRIENDLIAI INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-816 (MN) |
| | ) | |
| HUGGING FACE, INC., | ) | **REDACTED** |
| | ) | **PUBLIC VERSION** |
| Defendant. | ) | |

# DEFENDANT HUGGING FACE, INC.'S RESPONSIVE DISCOVERY DISPUTE LETTER TO THE HONORABLE SHERRY R. FALLON

POLSINELLI PC
Stephen J. Kraftschik (#5623)
222 Delaware Avenue, Suite 1101
Wilmington, DE 19801
(302) 252-0920
skraftschik@polsinelli.com
   *Attorneys for Defendant Hugging Face, Inc.*

OF COUNSEL:

Jason A. Wietjes
POLSINELLI PC
2950 N. Harwood St., Ste. 2100
Dallas, TX 75201
Tel.: (214) 661-5519
jwietjes@polsinelli.com

Original Filing Date: July 25, 2024
Redacted Filing Date: August 2, 2024

96495487.6

Dear Judge Fallon:

I write on behalf of Defendant Hugging Face, Inc. ("Hugging Face") in response to FriendliAI's July 24, 2024 Discovery Dispute letter (D.I. 90). At a high level, Plaintiff's approach to discovery in this case has been asymmetric, unreasonable, and disproportional. Some of the issues raised in Plaintiff's letter have not been previously raised with Defendant's counsel (e.g., the supposedly missing Samsung license and the so-called "custom code"). Other disputes reflect Plaintiff's desire for Defendant to produce documents and data which are not kept by Hugging Face in the ordinary course of business. Hugging Face has worked diligently and in good faith to comply with the Court's prior order. As to Plaintiff's requests to compel in-person depositions in the U.S., Hugging Face just recently learned that Jeff Boudier plans return to the U.S. around August 22, and he will be available for deposition before September 11. As to the other witnesses, they are French Citizens residing in France. Neither has been designated as a 30(b)(6) witness and Mr. Simon is no longer employed by Hugging Face. Hugging Face has also repeatedly offered to make Mr. Delangue available in person in France or a remotely, but FriendliAI has rejected that compromise even though it is taking the depositions of other Hugging Face witnesses remotely.

Given the time limits of this briefing schedule, and that Hugging Face personnel are all currently in France, counsel did not have time to secure a declaration from Hugging Face to support this response letter. Hugging Face expects to submit a supplemental declaration in advance of the teleconference scheduled for August 1, 2024, to the extent issues may remain unresolved with FriendliAI in view of Hugging Face's new understandings gleaned from the characterizations in FriendliAI's letter. Hugging Face also requests the opportunity to present argument on FriendliAI's positions. FriendliAI has raised no less than seven discovery issues in its letter (some of which are new issues that have not been previously discussed between the parties), and Hugging Face respectfully suggests that the Court and the parties would benefit from the opportunity to discuss the complicated technical issues that underlie many of the questions raised by FriendliAI.

**Background on Discovery Efforts**: As an initial matter, Plaintiff's discovery expectations in this case are asymmetrical and unreasonable. Plaintiff itself was extremely slow to make its own substantial document production. Until July 8, FriendliAI had produced virtually no substantive documents (less than 1,000 documents total, most of which were screenshots and video files from Hugging Face's YouTube channel). *See* Ex. A. FriendliAI has since produced about 5,000 more documents (about 40k pages). Indeed, FriendliAI produced about 1,000 of those documents on July 15, a mere 2 days before the original July 17, 2024 discovery cutoff. In fact, the discovery period was recently extended, in part, to account for FriendliAI's late production. In contrast, Hugging Face has produced over 350,000 pages of documents. Hugging Face submits that the overall context of discovery between the parties is an important factor in the Court's evaluation of FriendliAI's unreasonable and disproportionate discovery demands.

**Financial Information**: Hugging Face produced court-ordered financial information on June 20, and 14 additional spreadsheets comprising usage information on July 19. The process to compile and generate these spreadsheets was extensive, requiring counsel to work with Hugging Face to determine whether such data exists and where it was held, run tools to isolate and compile the data, generate reports, and produce them to FriendliAI. These spreadsheets are not documents that are kept in Hugging Face's ordinary course of business. FriendliAI has suffered no prejudice by the slight delay in receiving these reports given that the data is relevant only to alleged damages (and expert reports regarding damages are still far in the future). Hugging Face has acted in good faith to identify responsive data and to comply with the Court's Order. *See, e.g.,* Ex. B, C.

The Honorable Sherry R. Fallon  Page 2
July 25, 2024

**TGI Usage Data**: FriendliAI now complains that Hugging Face's production of usage data was incomplete. During the meet and confer process, Counsel for Hugging Face explicitly asked counsel for FriendliAI to provide any documents believed to reference any Hugging Face usage data so that specific questions about those items could be discussed directly with Hugging Face. FriendliAI's opening letter is the first time counsel for FriendliAI raised the documents attached as Exhibits B and C to its letter. The documents themselves, however, indicate that the complained of data is held by third-parties (Pltf. Exhibit B) or unrelated to TGI (Pltf. Exhibit C).



). Regarding Ex. C, the "Top used tasks" percentages on pages 4, 7, 10, 13, and 16 refer to machine learning tasks as defined by the Transformers open source library, and are not related to TGI.

The capability to track usage data was not even built into TGI until Version 2.2, released on July 23, 2024. Ex. E. As such, Plaintiff need only look further into the documents in its own possession, refer to Hugging Face's publications, or confer in good faith with Hugging Face counsel prior to running to the Court to understand that the data it has repeatedly, erroneously asserted exists was not even a technical capability of TGI until two days ago.

**HFOIL License and Expenses**: Plaintiff has cited no document or other evidence indicating that revenue from Hugging Face's HFOIL license is separately calculated and/or maintained in the regular course of business or even as a one-off exercise. Further, Plaintiff has not indicated any document or other information which would indicate that HFOIL license revenue is even separable from other revenue categories, information for which have already been produced to Plaintiff. *See supra* at "Financial Information." Regarding Plaintiff's bare assertion that "Hugging Face has not produced any data regarding costs," Plaintiff provides this statement without any support and in contradiction to the weight of documents produced by Hugging Face. *See supra* at "Financial Information;" *see also, e.g.,* Ex. F. These produced documents, amongst many others, show a variety of expenses tracked by Hugging Face.

███████████: Plaintiff identified six licenses in its prior discovery motion. Those licenses and numerous others have been produced. Plaintiff raised the purported ███████ license for the first time in its July 24 letter to the Court. Hugging Face did not have a chance before this response to address the issue. The reference in Plaintiff's Exhibit D to the ███████ ███████ however, appears to be an inadvertent mischaracterization by Hugging Face of the nature of the agreement with ███████ Hugging Face understands that its agreement with ███████ was originally intended to be a TGI license, but was executed as an Expert Support Agreement when the TGI HFOIL license was reverted back to an Apache 2.0 license. Plaintiff's original RFP and its request in its June 5 Letter (D.I. 59) were specifically directed to licenses "relating to the accused TGI feature and the Accused Products." D.I. 59 at 3. The ███████ license was not within the scope of that request and so it was not identified by Hugging Face for production earlier. Nevertheless, counsel will discuss with Hugging Face whether it can locate and produce the ███████ license in advance of the August 1 teleconference.

**"Custom Code" for Enterprise Hub**: Hugging Face complied with the Court's June 10 Order by making additional source code, including Enterprise Hub, available for inspection.

96495487.6

The Honorable Sherry R. Fallon  Page 3
July 25, 2024

FriendliAI physically inspected this code on June 21, 2024. FriendliAI's new complaint is that Hugging Face has not produced the "custom code for the accused Enterprise Hub product." Preliminarily, it is not entirely clear what FriendliAI means by "custom code" and it has cited to no document and provided no exhibits that elucidate the issue.

To the extent Hugging Face understands the request, Plaintiff's request for "custom code" is a new request and raises several important issues. The "custom code" FriendliAI appears to now be seeking for the first time is believed to be merely code that is implemented for individual customers to integrate each customer's system to facilitate the customer's use of Hugging Face's products and does not appear to have any possible relevance to Plaintiff's infringement allegations. Plaintiff's assertion that the custom code "relates directly to implementation of the accused TGI functionality" is simply incorrect. Again, based on Hugging Face's understanding of FriendliAI's complaint from the bare assertions in FriendliAI's letter, the custom code FriendliAI references does not in any way affect the way that TGI functions, but rather just facilitates interfacing between the customer and Hugging Face's products. To be clear, Enterprise Hub is merely a user interface, much like a website. Indeed, FriendliAI itself does not even attempt to explain in its letter why the "custom code" it seeks would be relevant to any of the issues in the case. This request, moreover, would be unduly burdensome and disproportionate in that it would seem to require Hugging Face to produce code for each of its customers, and any such code implicates confidentiality concerns of the third-party customers, and as it stands, it is unclear to Hugging Face whether it may have custody or control over any such code.

**Deposition of Jeff Boudier**: Hugging Face has never refused to make Mr. Boudier available for deposition. Until recently, Hugging Face did not know when Mr. Boudier would be back in the United States (he is a French citizen who was spending time at home in France). Hugging Face offered many accommodations to work with FriendliAI to try to schedule that deposition without burdening the court with this dispute, including an in-person deposition in France, or a remote deposition. *See* Ex. G at 2-4. On July 19, Hugging Face informed FriendliAI's counsel that it had just learned that Mr. Boudier would be back in the U.S. on August 22 or 23, and would be made available for deposition in the U.S. shortly thereafter. Plaintiff, nevertheless, filed its discovery request because Hugging Face has not yet been able to offer a date certain for the deposition. Hugging Face will work with FriendliAI to make Mr. Boudier is available for his deposition in the U.S. no later than September 11, 2024, and thus the parties no longer have any ripe dispute regarding Mr. Boudier's deposition.

**Deposition of Clement Delangue**: Mr. Delangue, who has not been designated as a 30(b)(6) witness, is a French citizen currently in France. Hugging Face does not know if or when he will be back in the United States, and accordingly has offered to make him available live in France, remotely, or live in the U.S. if and when he returns.[1] Mr. Delangue's deposition also raises apex doctrine concerns which become more acute where plaintiff is attempting to force Defendant's CEO to spend 2-3 days in deposition and transatlantic travel). *Brit. Telecommunications PLC v. IAC/Interactivecorp*, 2020 WL 1043974, at *8 (D. Del. Mar. 4, 2020) (apex doctrine generally bars depositions of high level officers absent unique knowledge).

---

[1] FriendliAI's insistence that the deposition must occur before claim construction is also an artificial constraint. It is very unlikely that anything Mr. Delangue might say could have any bearing on claim construction, and Hugging Face has produced the key technical documents on which Plaintiff might rely in developing its claim construction positions.

The Honorable Sherry R. Fallon  Page 4
July 25, 2024

Critically, in negotiating the Scheduling Order, Plaintiff itself removed the Court's form requirement that officers be deposed in Delaware, and inserted the following simpler provision: "Any party or representative (officer, director, or managing agent) of a party filing a civil action in this district court will be deposed at a place mutually agreed upon by the parties and counsel." Ex. H. Plaintiff presumably proposed this revision (which Defendant accepted) out of some perceived self-interest (perhaps concern about depositions of its officers in South Korea). Plaintiff seeks Mr. Delangue's deposition under the scheduling order it proposed, and yet has rejected Defendant's reasonable offers to make Mr. Delangue available in France or remotely based only on its own preference for in-person deposition and its vague belief that securing depositions in France may require additional procedural work. Based on Hugging Face's counsel's preliminary research on this issue, an in-person deposition in France appears to be feasible. *See* Ex. G at 1.

**Deposition of Julien Simon**: Plaintiff's motion regarding Mr. Simon (a French citizen) is not a discovery dispute, but rather a premature attempt to obtain tactically beneficial evidentiary rulings regarding statements made by Mr. Simon on his personal YouTube page (i.e., to obtain a ruling that Mr. Simon's statements on his personal YouTube page be deemed party admissions of Hugging Face). Critically, Hugging Face did not identify Mr. Simon in its Rule 26 disclosures as an individual that it might use to support its claims or defenses.[2]

Hugging Face never misled Plaintiff regarding Mr. Simon's availability for deposition. Just as counsel were starting to negotiate deposition availability, Mr. Simon informed Hugging Face he was leaving on July 12. As Hugging Face's counsel stated on Wednesday July 3, Mr. Simon also had a previously scheduled vacation (using accrued PTO) the week of July 8-12 and would thus be unavailable that week. Mr. Simon decided on his own to leave the company right around the time the parties were starting to discuss deposition dates. This is a coincidence, not a conspiracy. Hugging Face was not expecting Mr. Simon's departure, and was surprised by his notice. Hugging Face has further stated that it will not oppose any efforts by FriendliAI to secure the deposition of Mr. Simon (now a former employee). FriendliAI's reluctance to use the typical procedures available for obtaining depositions is no reason for the Court to issue the draconian evidentiary sanction sought by FriendliAI.[3] In summary of this issue, FriendliAI essentially asks the Court to make the legal determination that videos and statements therein posted to Mr. Simon's personal YouTube channel be deemed made in the course and scope of his employment such that they can be deemed attributed directly to Hugging Face in some way. Such a determination would require an independent review and analysis of each video FriendliAI seeks to have attributed to Hugging Face. This is not a proper or warranted sanction simply because a fact witness that FriendliAI desires to depose unexpectedly left the company before his deposition could be taken.

---

[2] Hugging Face has identified Mr. Simon in discovery only once, in its response to Plaintiff's interrogatory number 14. Mr. Simon was identified as one of 26 individuals who have provided support to Hugging Face customers. Ex. I.

[3] FriendliAI also attempts to use the lack of prior ESI collection from Mr. Simon to support its baseless conspiracy theory. But Mr. Simon was not one of the parties' agreed custodians for ESI collection, and FriendliAI never requested to add him prior to this dispute. After this dispute arose, Hugging Face offered to produce Mr. Simon's ESI to resolve the issue, but FriendlAI did not accept that offer, and has instead pursued an unwarranted discovery sanction.

96495487.6

The Honorable Sherry R. Fallon         Page 5
July 25, 2024

                                      Respectfully,

                                      */s/ Stephen J. Kraftschik*

                                      Stephen J. Kraftschik

SJK:ncf
cc:  All Counsel of Record (via e-mail)
Enclosures

96495487.6